*223
Curia, per

Evans, J.
I think it may be said to be well settled law, that where a creditor takes a note for a debt due on open account, the account is not merged in the note, and he may in most cases sue on either at his election. But he cannot sue on the account until the time fixed for the payment of the note has expired. The reason is, that as a note is a better security, although of the same degree, that is a sufficient consideration to support the promise (o extend the time of payment. But in this case the evidence is very clear that the goods were sold on a credit of six months, and the notes were payable at the same time as the debts would have been on the open account. It ivas immaterial then, whether the action was on the notes or account. In either case it was commenced before the money was due. By our law no action can be brought before the money is due. The debtor is not in default until the day of payment is past. Until then, no writ can be issued against him except in one case hereafter to be mentioned.
But by the law of Yirginia, where this contract was made and the parties were resident, it is provided that in certain cases a creditor by attachment may seize the goods of his absconding debtor before his debt is due. The law of Yirginia, as proved by the attorneys who have been examined, is as follows. Taze-well Taylor, Esq., says : “ that a creditor who has sold goods on a credit to one who is removing his effects, or has removed, leaving effects within the commonwealth, or where such creditor has just cause to suspect that his debtor will remove with his effects out of the commonwealth before his debt will be payable, is authorized by the laws of Yirginia to go before any magistrate of the county or corporation where his debtor resides, or, in case such debtor has removed, where he last resided, or where his effects may be found, and make oath to the true amount of his debt and the time when it will be payable ; and that he has just cause to suspect, and verily believes that such debtor will remove himself with his effects out of the commonwealth, before such debt will become payable, or has actually so removed, and also that he had no knowledge when the said debt was contracted of *224 the intention of the said debtor so to remove. And thereupon, such magistrate, taking bond and security of the creditor in double the sum to be attached for, payable to the debtor and conditioned for satisfying and paying all costs which shall be awarded to the said debtor, in case the plaintiff suing out the attachment shall be cast in his suit, and also all damages which shall be recovered against him for suing out the same, shall issue an attachment against- the goods and chattels of the debtor, returnable to the next Court of the county or corporation, which attachment may be served on the goods and chattels of such debtor or any garnishee or garnishees. If such debtor shall not, on or before the return of such attachment, enter into bond with sufficient security for the payment of the-debt when it shall become due, the Court, on due proof of the justice thereof, and of the intention of the debtor to remove, or of his having acfually removed out of the commonwealth, shall grant judgment in favor of the plaintiff for his debt and costs, and shall direct the goods attached to be sold upon a credit, until the time the plaintiff’s debt shall become payable.” In the consideration of the case, I shall assume that the defendants were absconding debtors, and that by the laws of Virginia, the plaintiff had a legal right to sue out an attachment to seize the goods, although their debt was not due, within the State of Virginia. The only question then is, whether in this State they are entitled to a similar remedy.
The nature, obligation and construction of contracts are to be governed by the lex loci contractus, but the remedies by which contracts are enforced, are to be according to the lex fori, which is strictly territorial in its operation. Story de confl. § 239, 240, 242, 260, 556, 557. We all agree, says Mr. Justice I-Ieath (1 Bos. & Pal. 142) that in construing contracts, we must be governed by the laws of the country in which they are made ; for all contracts have relation to such laws. But when we come to remedies it is another thing; they must be pursued by the means which the law points out where the parties'reside. The laws of the country where the contract was made, can only have *225 re.Mence to the nature of the contract, not to the mode of enforcing it. In De La Vega vs. Vianna (1 B. & Ad. 284,) Lord Tenter-den said : “ A person suing in this country, must take the law as he finds it. He cannot, by any regulation of his own country, enjoy greater advantages than other suitors here. He is to have the same rights which all the subjects of this kingdom are entitled to.” Judge Story, in his treatise on the Conflict of Laws, sect. 556, says: “ It is universally admitted and established, that the forms of remedies, and the modes of proceeding, and the execution of judgments, are to be regulated solely and exclusively by the laws of the place where the action is instituted, or, as the civilians express it, according to the lex fori.” And in sec. 557, he says: “ All that a nation can therefore be. justly required to do, is to. open its own tribunals to foreigners in the same manner and to the same extent as they are open to its own subjects, and to give them the redress, as to rights and wrongs, which it deems fit to acknowledge, in its own municipal code, for natives and residents.” This is what is meant by the comity of nations, and I do not find it has ever been extended beyond what is here said. (Story De Confl. § 38.) It is enough that in the construction and obligation of a contract made in a foreign country, effect is given to it according to the laws of that country, but in doing so we must resort to the same code of procedure as we extend to our own citizens.
The question is this, whether the right to issue an attachment for a debt not due is a part of the obligation of the contract, or a mere remedy whereby the goods of an absconding debtor are seized and held by the law to satisfy the debt when it becomes due. It might be sufficient on this case to say, that the Virginia law does not profess to add any thing to the contract itself. It does not declare that if the debtor, absconds, his debt shall be payable immediately. It goes no farther than to authorize the seizing of the debtor’s goods, and the sale of them “ on a credit, until the time the plaintiff’s debt becomes payable.” It is like an Act of the Legislature which, under certain circumstances, authorizes a creditor to hold his debtor to bail before his debt is *226 due, but does not give judgment, or award execution, until the debt is payable. It does not interpolate any additional obligation into the contract. It gives only a new remedy as a guaranty for the performance of the contract, according to the stipulation of the parties. It is no more a part of the contract than the law which authorizes the holding of the defendant to bail as a guaranty, that4when judgment is rendered, he shall be forthcoming to satisfy the debt. This is certainly nothing but a remedy, and of course belongs to the lex fori. In deciding questions as to remedies, the first question relates to the right of the plaintiff to sue, and second, what is the form of the action by which his right is to be enforced. In relation to the latter, there can be no doubt that if the party has a right to sue, he is entitled to the remedies provided for citizens and residents m like cases. In relation to the former, it is contended that on principle and authority we shall determine according to the law of the country where the contract was made; and, therefore, as by the law of Virginia the plaintiff could sue out a writ in attachment in that State, he is entitled to the use of a similar remedy, when he finds his debtor in this State. Let us examine the cases which, have been cited to support the proposition. Innes vs. Dunlap (8 T. R. 595.) The bond was made and assigned in Scotland, where, by law, bonds are assignable. The action was brought in England, where bonds are not assignable. The plaintiff did not sue on the bond as assignee, but he brought assumpsit. The declaration, after stating the making and assigning the bond, alleged that by the law of Scotland, the defendant became liable to pay, and being indebted, promised to pay. To the declaration there was a demurrer, but the Court said this is not an action on the bond; and they were' clearly of opinion the assignment was a consideration to support the promise, and the defendant, by demurring, confessed both the consideration and the assumpsit. O'Callaghan vs. Thomond (3 Taunt. 82.) This was an action on an Irish judgment by the assignee. Such a judgment was assignable by the Irish, but not by the English law, so as to authorize the assignee to sue in *227 his own name. The plaintiff was allowed to recover on the assignment, because the title to the judgment was vested in him by the lex loci. This case comes nearer than any other to the principle contended for, but it is contrary to our decisions on the right of an assignee in bankruptcy to sue in his own name (1 Mill, 283; 4 McC. 419;) and Mr. Justice Story says that it stands alone and can scarcely be thought unexceptionable, and is contrary to the dictums of Lord Loughborough, in Folliott vs. Ogden (1 H. Bl. 135.) and of Lord Ellenborough, in Wolff vs. Oxholm (4 M. & S. 99.)
Melan vs. Fitz-James (2 B. & P. 138.) The action was on a bond made in France, on which, by the laws of France, the obligor incurred no personal liability, but thé remedy was altogether in rem. The defendant was discharged out of custody. Eyre, C. J. said : “what the nature of the obligation is, must be determined by the laws of the country where it was entered into, and then this country will apply its own laws to enforce it.” If the contract creates no personal liability, but is an obligation in rem, it cannot be that its nature can be changed or its obligation varied by a mere change of domicil. (Story de Confl. §569.) I see nothing in these cases which authorizes the conclusion for which they were cited, that because the plaintiffs had a right to sue in the country where the contract was made, they had a right to sue in this State, although by our law no such right exists between citizens and residents.
That the time at which and within which an action lies on a contract, is a part of the lex fori, is very clear, on the authority of adjudged cases, and on settled principles. Our law has provided no remedy on a contract not due, except the Act before referred to, for holding a debtor to bail who is about to remove; and the general principle is unquestioned, that no action lies until there is a breach of the obligation of the contract. But as to the time within which an action must be brought, there are numerous adjudged cases establishing that the statute of limitations belongs to the lex fori. This was decided in our case of Levy vs. Boas (2 Bail. 217;) McElmoyle vs. Cohen (13 Peters, 312.) *228 By the laws of this State, the right of action begins the day the money is due, and ends four years after that time, and, if the latter be regulated by the lex fori, the former must be also. The period of limitation is as much a part of the obligation of the contract, as the time when an action may be brought. They stand on the same footing and are governed by the same princi-' pies. We are therefore of opinion that the law of Yirginia is a part of the lex fori, not changing the nature or obligation of the contract, but only affording a new remedy in certain cases, to be enforced in that State in the manner pointed out by the statute. But when the action is brought in this State, it is to be governed by our laws, which afford no remedy by attachment on a debt before it is due. The consequence is that, as the plaintiffs, had no cause of action when this suit was commenced, the motion for a non-suit must be granted ; and it is so ordered.
O’Neall, Wardlaw, Withers and Whitner, JJ., concurred.

Motion granted.